**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Darren Macdonald**, individually, and **Alan Maycock**, individually, on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>**Corduroy IP LLC**, an Arizona limited liability company,<br><br>            Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

This case addresses a disturbing trend whereby real estate companies such as Defendant Corduroy IP LLC d/b/a North & Co. direct their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act.  Plaintiff Darren MacDonald ("Plaintiff MacDonald" or "MacDonald") and Plaintiff Alan Maycock ("Plaintiff Maycock" or "Maycock") bring this Class Action Complaint and Demand for Jury Trial against Defendant to stop it from directing its agents to violate the Telephone Consumer Protection Act ("TCPA").

These calls by North & Co. agents were placed to consumers using pre-recorded messages without the consumer's written consent to receive such calls. In addition, these calls are often placed to consumers who have registered their numbers on the national Do Not Call registry ("DNC") in violation of the TCPA. As a result, Plaintiff MacDonald and Plaintiff Maycock seek to obtain injunctive and monetary relief for all persons injured by North & Co.'s telemarketing scheme. The Plaintiffs, for this Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**PARTIES**

1.      Plaintiff Darren MacDonald is a resident of Scottsdale, Arizona.

2.      Plaintiff Alan Maycock is a resident of Phoenix, Arizona.

3.      Defendant North & Co is a limited liability company headquartered at: 5635 E. Thomas Road, Phoenix, Arizona, 85018. Defendant conducts business throughout this District.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and because the wrongful conduct giving rise to this case was directed from and/or occurred in this District. Additionally, Plaintiff MacDonald and Plaintiff Maycock both reside in this District.

## COMMON ALLEGATIONS

6.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13.     According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

14.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

17.     In recent years a troubling trend has surfaced in the real estate industry where real estate agents are cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

18.     This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls without their consent and in violation of the TCPA.

## NORTH & CO

19.     North & Co is a real estate brokerage that services consumers in buying and selling homes in Arizona.[3]

20.     North & Co is directly involved in the business development of each of its realtors, providing its realtors with training, coaching and technology.

21.     As Stephanie Gonzalez, the COO and business partner for North & Co explained regarding North & Co. realtors, "We purposely (and regularly) engage and intervene to make sure we partner with them in both their personal development as well as the continued evolution of their business models."[4]

22.     North & Co maintains 2 main office locations, both of which are in Arizona. Training is conducted primarily in the Phoenix office and online through Zoom chats.

23.     An essential part of North & Co's marketing plan involves cold calling consumers to generate leads for its real estate services.

## NORTH & CO TRAINS ITS REALTORS TO ENGAGE IN COLD CALLING

24.     Brian North is the CEO and Founder of North & Co.[5]

---

[3] https://northandco.com/story/
[4] http://voyagephoenix.com/interview/meet-stephanie-gonzalez-northco-arcadia-tempe/
[5] https://northandco.com/leadership/

4

25.     North is directly involved training his realtor agents. At least once a month, North gives a training class to his agents called "Monthly Sales Skills with Brian."[6]

26.     In a webinar with North, North is asked about contacting consumers with expired listings. North ratifies the conduct of his agents who call expireds by stating  "There are agents in our office who have massive success with what we refer to as cancelled expireds."[7]

27.     Consumers with expired listings receive unsolicited phone calls from realtors, despite having never provided their contact information to the realtors that are calling them.

28.     In acknowledging the success that his realtors have with expired listings, North is ratifying the cold calls to consumers that his realtors engage in when calling consumers with expired listings.

29.     Later in the aforementioned video, the webinar host asks North about when it makes sense for a realtor to pursue purchased leads, rather than engaging in traditional lead generation. North answers,

> "When you've perfected the art of phone sales, right. I would get lists of phone leads and I would call… If I were you, ***I would cold call a thousand people*** before I paid for online leads. Online leads are really, really expensive… You also need to make a thousands phone calls ***because you're going to require thick skin***. You're going to require having to learn how to be quick on your feet to keep people on the phone… It's an art."[8]
>
> (emphasis added)

30.     On February 12, 2019, North & Co posted a picture from a training session in which North was training agents in placing calls using a dialer:

---

[6] https://northandco.com/event/
[7] http://fast.wistia.net/embed/iframe/hyru68llzn . – 40:35 into the video
[8] http://fast.wistia.net/embed/iframe/hyru68llzn – 45:40 into the video



31.    A similar session was also held on March 26, 2019, based on another posting

North & Co posted to Facebook showing North leading the dialer training session:

9

https://www.facebook.com/northandco/photos/a.357236257712448/1587479251354803/?type=1
&theater



32.     In North's Facebook page, he provides some videos of training sessions he provided for North & Co agents.

33.     For example, North posted the following 2 videos in which he trains and encourages his realtors to spend dedicated amounts of time on the phone placing calls to potential customers:

[10] https://www.facebook.com/pg/northandco/posts/?ref=page_internal



**Brian C. North** was live — with Margaret Rose Miranda.
March 26, 2019 · 🌐

Good morning and welcome and Dial and Freestyle! Margaret Miranda on the "ones and twos"... Ask questions, make comments and yes you can definitely
make fun of me..



[11]



[12]

34.   In these videos, North himself focuses on placing calls using the CINC auto dialer to consumers who provided contact information online through a North & Co website.

---

35.     Throughout these videos, North encourages his realtors to engage in placing calls, referencing one agent who places 300 calls per week, before addressing an agent who was in the online video training specifically, telling him to jump on the dialer.[13]

36.     In addition to training from Brian North, North & Co also posted twice on Facebook about cold calling training sessions that it hosted for its realtors led by Anna Selby, a real estate coach:





37.     In her Linkedin profile, Selby claims that she personally placed 2,000 cold calls herself each week when she worked as a realtor.[16]

38.     By bringing Anna Selby to coach its realtors, North & Co is endorsing the cold calling training that Selby presented to its realtors.

### NORTH & CO PROVIDES ITS REALTORS WITH A DIALER CAPABLE OF LEAVING PRE-RECORDED MESSAGES

---

[15] *Id.*
[16] https://www.linkedin.com/in/anna-selby/?locale=ru_RU

10

39.     North & Co provides Commissions Inc. ("CINC"), a leads management customer relationship management ("CRM") platform to all of its realtors:

# HUMANOLOGY: Marketing & Tech Tools Review

## November 20 @ 12:00 pm - 1:00 pm Free

« The New Social Media Mind w/Al Fuentes                    North Phoenix Neighborhood Happy Hour »

North&Co. has a bevy of marketing and technology tools! Each are optional resources to help you leverage the North&Co. name, strengthen your own individual/team brand image and help you better connect to your client base. In this 75-minute class you will experience a fast-pace intro into each resource. The two marketing resources which will help your personal/team brand are: North&Co. Shop & Breakthrough Broker. The remaining five resources can help you better engage with your clientele: The Catalogue, CINC, PRE Open, Ogulo & the North&Co. app. If you a veteran you might want to attend for a refresher, but if you are a new agent to North&Co. this is a must attend!

North&Co. Shop = Online Shop for Signs, Swag & Collateral

Breakthrough Broker = Template Online Marketing Center

The Catalogue = Proprietary website for off-market listings (& buyer needs)

CINC = FREE Company lead generation and conversion website & CRM                    [17]

40.     In addition to providing the CINC CRM to its realtors, North & Co provides regular training at least once a month on how to use CINC:

---

[17] https://northandco.com/event/humanology-marketing-tech-tools-review/

# HUMANOLOGY: CINC NEW Team Member Training Q&A

## October 29 @ 10:30 am - 11:30 am

« Coffee Talk Market Watch                                                                                 HUMANOLOGY: BrokerMint Webinar »

A powerful real estate platform that allows you to assign leads, create efficiencies, track your team's progress and manage your business from one centralized platform. This is Part 4 to a 4 part webinar series. This webinar is exclusively dedicated to agents who are interested in participating in the company leads team, and program.  In order to start receiving company leads, on/after November 1, you must take webinars 1, 2 & 3 AND read, understand and sign the company leads team agreement. The link for each webinar will be added to the events calendar page the day before.

Join Zoom Meeting
https://cincpro.zoom.us/j/859944410
Meeting ID: 859 944 410                                                                                                              18

41.     The CINC CRM includes a dialer that can be used for both calling and for sending out text messages *en masse* as well as leaving pre-recorded messages.

42.     Relevant to this case, the CINC dialer can be programmed to leave a pre-recorded voicemail for a consumer if the consumer misses a phone call:

---

[18] https://northandco.com/event/humanology-new-team-member-training-qa/



43.     By Defendant North & Co. providing its realtors with an dialer capable of leaving pre-recorded messages, and regularly training realtors as to how this system can be used, North & Co is actively endorsing and benefitting from its realtors calling consumers with pre-recorded messages.

## TCPA LEGALITY OF PRE-RECORDED CALLS

44.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent for all autodialed or pre-recorded [solicitation] calls to wireless numbers and residential lines.*" *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

45.     Yet in violation of this rule, Defendant and its realtors fail to obtain any express written consent prior to placing pre-recorded calls to cellular telephone numbers.

46.     In addition, Defendant North & Co is directing its realtors to place calls to consumers, many of whom have their phone numbers registered on the DNC.

## PLAINTIFF MACDONALD'S ALLEGATIONS

**At North & Co's Direction, North & Co Realtors Called Plaintiff MacDonald's Cell Phone Number Without His Consent Using Using a Pre-recorded Voice Message**

47.     Plaintiff MacDonald registered his cell phone number on the DNC on August 27, 2003.

48.     MacDonald uses his cell phone for personal use. It is not used as part of a business.

49.     MacDonald was not looking to purchase or sell a property.

50.     On May 31, 2018, MacDonald received a pre-recorded call from a North & Co realtor on his cell phone stating:

> "Hi, my name is Emma with North & Co Real Estate. We have a bunch of buyers who's interested in purchasing a home in your neighborhood. So, if ever you consider selling, please give us a call at 480-389-3848. Have a great day. Bye."

51.     Emma is believed to be Emma Ruth Mallari located in the Philippines and
employed directly by North & Co as a virtual assistant at North & Co.[19]



Region III - Central Luzon, Philippines · 1 connection ·
Contact info

Experience

Real Estate Virtual Assistant
North&Co.

52.     A North & Co realtor formed SecondYou Virtual Assistants to assist realtors in
outsourcing their lead generation and cold calling.[20]

53.     North & Co provides training on hiring "Virtual Assistants in your Real Estate
Business" to all of its agents.[21]

54.     Later on May 31, 2018, Plaintiff MacDonald received a call on his cell phone
from Emma, the same North & Co realtor that left him the pre-recorded voicemail on his cell
phone.

55.     Emma told MacDonald that she was calling to see if MacDonald would like to
sell his home within the next 6-12 months.

---

[19] https://www.linkedin.com/in/emma-ruth-mallari-8498a1190/
[20] https://www.linkedin.com/in/nick-mowery-336a4610/
[21] https://northandco.com/event/how-to-use-a-virtual-assistant-w-nick-mowery/

56.     Frustrated by the unsolicited calls, MacDonald told Emma that she was breaking the law. Emma replied saying, "I'm so sorry. But yeah, we can definitely take you off the list. And I'll let my team also know, but thank you so much for picking up." Emma then hung up.

57.     Despite being told that his number would be taken off North & Co.'s list, MacDonald received another unsolicited call to his cell phone on October 24, 2019 at 12:25 PM from a North & Co. realtor using phone number 480-382-8823.

58.     Plaintiff MacDonald answered this call, but after 10 seconds of silence, the call ended.

59.     Seconds later, MacDonald received another phone call from 480-382-8823 to his cell phone number.

60.     This call was from a realtor who identified himself as being with North & Co.

61.     MacDonald told the realtor that he wasn't interested and the call ended.

62.     Plaintiff MacDonald has never provided his cellular phone number, or any phone number to North & Co., or otherwise consented to any North & Co. realtor placing solicitation telephone calls to his cell phone number.

**PLAINTIFF MAYCOCK'S ALLEGATIONS**

**At North & Co's Direction, North & Co Realtors Called Plaintiff Maycock's
Cell Phone Number Without His Consent**

63.     Plaintiff Maycock registered his cell phone number on the DNC on November 15, 2006.

64.     Plaintiff Maycock uses his cell phone for personal use. It is not used as part of a business.

65.     Maycock was not looking to purchase or sell a property.

66.     At the beginning of 2020, Plaintiff Maycock began receiving unsolicited calls to his cell phone number from North & Co agents asking if he wanted to sell his home.

67.     Plaintiff Maycock told the agents from the first call he answered at the beginning of 2020 that he was not looking to sell his home, and specifically told the agents that his phone number is on the DNC and not to call him again.

68.     Plaintiff Maycock noted that the calls were coming from phone numbers that could not be called back, by agents who sounded like they could be overseas.

69.     Each call that Plaintiff Maycock received on behalf of North & Co was placed using a different phone number.

70.     Despite his numerous stop requests, Maycock received an unsolicited call to his cell phone as recently as September 28, 2020 from an agent using phone number 602-481-8594 at 11:17 AM.

71.     When Plaintiff Maycock answered this call, there was a significant pause before a live agent came on the line questioning if Plaintiff Maycock wanted to sell his home.

72.     Plaintiff Maycock recognized the voice of this agent from previous calls where he had asked for the calls to stop.

73.     Plaintiff Maycock asked the agent which company she was calling from, in order to confirm the company name.

74.     The agent clearly stated that she was calling from North & Co. more than once, just so Plaintiff Maycock could be certain that the name was clear.

75.     Plaintiff Maycock informed the agent that she was breaking the law, that he had told her to stop calling already, and that his phone number is registered on the DNC.

76.     In total, Plaintiff Maycock estimates that he received between 15 and 20 unsolicited calls on behalf of North & Co.

77.     Plaintiff Maycock has never provided his cellular phone number, or any phone number to North & Co, or otherwise consented to any North & Co realtor placing solicitation telephone calls to his cell phone number.

78.     The unauthorized autodialed and pre-recorded calls placed by North & Co realtors harmed Plaintiff MacDonald and Plaintiff Maycock in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of their cell phones, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones.

79.     The unsolicited calls also caused undue duress, as both Plaintiff MacDonald and Plaintiff Maycock asked for the calls to stop, but still received additional calls.

80.     Seeking redress for these injuries, Plaintiff MacDonald and Plaintiff Maycock, on behalf of themselves and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded phone calls to cellular telephones, as well as unsolicited phone calls to phone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiffs' TCPA Claims

81.     Plaintiff MacDonald and Plaintiff Maycock bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called, (2) for substantially the same reason Defendant called Plaintiff MacDonald, (3) using a pre-recorded message, and (4)

for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff MacDonald, or (b) it did not obtain prior express written consent.

**National Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on his/her residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called the Plaintiffs and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call, or (b) it did not obtain prior express written consent.

**Internal Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on his/her residential telephone number; (2) within any 12-month period, (3) for substantially the same reason Defendant called the Plaintiffs.

82.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff MacDonald and Plaintiff Maycock anticipate the need to amend the Class definitions following appropriate discovery.

83.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

84.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff MacDonald, Plaintiff Maycock and the Classes, and those

questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant's real estate agents placed pre-recorded voice calls to Plaintiff MacDonald and the members of the Pre-recorded No Consent Class;

(b)     whether Defendant systematically made multiple telephone calls to Plaintiff MacDonald, Plaintiff Maycock, and consumers whose telephone numbers were registered on the DNC;

(c)     whether Defendant's real estate agents placed calls to Plaintiff MacDonald, Plaintiff Maycock, and members of the Classes without first obtaining prior express written consent to place the calls;

(d)     whether Defendant's conduct constitutes a violation of the TCPA; and

(e)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

85.     **Adequate Representation**: Plaintiff MacDonald and Plaintiff Maycock will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff MacDonald and Plaintiff Maycock have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to any the Plaintiffs. Plaintiff MacDonald, Plaintiff Maycock and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff MacDonald, Plaintiff Maycock or their counsel has any interest adverse to the Classes.

86.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with

respect to the Classes as wholes, not on facts or law applicable only to the Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Pre-recorded No Consent Class)**

87.     Plaintiff MacDonald repeats and realleges paragraphs 1 through 86 of this Complaint and incorporates them by reference.

88.     Defendant's realtors made unwanted solicitation telephone calls to Plaintiff MacDonald and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

89.     These pre-recorded voice calls were made *en masse* without the prior express written consent of Plaintiff MacDonald and the other members of the Pre-recorded No Consent Class.

90.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff MacDonald and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs MacDonald, Maycock, and the Do Not Call Registry Class)**

91.     Plaintiff MacDonald and Plaintiff Maycock repeat and reallege paragraphs 1 through 86 of this Complaint and incorporate them by reference.

92.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

93.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[22]

94.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

95.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff MacDonald, Plaintiff Maycock and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

96.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff MacDonald, Plaintiff Maycock and the Do Not Call Registry Class received more than one telephone call in a 12-

---

[22] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as

described above. As a result of Defendant's conduct as alleged herein, Plaintiff MacDonald,

Plaintiff Maycock and the Do Not Call Registry Class suffered actual damages and are entitled to

a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald, Plaintiff Maycock and the**
**Internal Do Not Call Class)**

97.     Plaintiff MacDonald and Plaintiff Maycock repeat and reallege paragraphs 1

through 86 of this Complaint and incorporate them by reference.

98.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for

telemarketing purposes to a residential telephone subscriber unless such person or entity has

instituted procedures for maintaining a list of persons who request not to receive telemarketing

calls made by or on behalf of that person or entity. The procedures instituted must meet the

following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes
> must have a written policy, available upon demand, for maintaining a do-not-call
> list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any
> aspect of telemarketing must be informed and trained in the existence and use of
> the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a
> call for telemarketing purposes (or on whose behalf such a call is made) receives a
> request from a residential telephone subscriber not to receive calls from that
> person or entity, the person or entity must record the request and place the
> subscriber's name, if provided, and telephone number on the do-not-call list at the
> time the request is made. Persons or entities making calls for telemarketing
> purposes (or on whose behalf such calls are made) must honor a residential
> subscriber's do-not-call request within a reasonable time from the date such
> request is made. This period may not exceed thirty days from the date of such
> request. If such requests are recorded or maintained by a party other than the

person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

99.     Defendant placed solicitation calls to Plaintiff MacDonald, Plaintiff Maycock and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

100.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid

receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

101.    Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff MacDonald, Plaintiff Maycock and the other members of the Internal Do Not Call Class are each entitled to between $500 and $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff  MacDonald, individually, and Plaintiff Maycock, individually, and on behalf of the Classes, pray for the following relief:

102.    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff MacDonald and Plaintiff Maycock as the representatives of the Classes; and appointing their attorneys as Class Counsel;

103.    An award of actual and/or statutory damages and costs;

104.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

105.    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

106.    Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs MacDonald and Maycock request a jury trial.

Dated: November 5, 2020

By: /s/ Nathan Brown
Nathan Brown
Telephone: (602) 529-3474
Nathan.Brown@BrownPatentLaw.com
*Local Counsel for Plaintiff and the putative Class*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Pro Hac Vice motion forthcoming*